## Case No. 1,192.

### BEARSE v. ROPES et al.

[1 Spr. 331;[1] 19 Law Rep. 548.]

District Court, D. Massachusetts.   Nov. Term, 1856.

SHIPPING—CARRIAGE OF GOODS—DANGERS OF THE SEAS — LIABILITY FOR DAMAGE — BURDEN OF PROOF—RECOUPMENT FROM FREIGHT MONEY.

1. Under the common bill of lading, the carrier is not necessarily exonerated from liability for damage, although he take the usual care and precautions, and convey the goods in the usual manner.

2. Where goods shipped under such bill of lading, are damaged on the voyage, and the carrier claims to be exonerated, on the ground that the damage was caused by the danger of the seas, the burden of proof is upon him.

[Cited in The Wilhelmina, Case No. 17,658; Richards v. Hansen, 1 Fed. 61. See, also, Hunt v. The Cleveland, Case No. 6,885; Turner v. The Black Warrior, Id. 14,253; The Zone, Id. 18,220.]

3. Where damage to hemp was occasioned by oil, which had escaped from casks in the hold, and the escaping of the oil was not caused by the danger of the seas: Held, that the carrier was liable for such damage to the hemp. Semble.—Where hemp is damaged by water's "blowing" in the hold, the weather being good during the voyage, and there being no extraordinary occurrence, and no unusual quantity or motion of water in the hold, the carrier is liable.

[Cited in The Wilhelmina, Case No. 17,658; Richards v. Hansen, 1 Fed. 61. See, also, The Sabioncello, Case No. 12,198; The Sloga, Id. 12,955; Crosby v. Grinnell, Id. 3,422.]

4. The carrier ought to take adequate measures to protect the cargo against a common and ordinary occurrence, which might and ought to have been foreseen.

[Cited in The Antoinetta C., Case No. 491; Richards v. Hansen, 1 Fed. 61.]

5. In a suit by a carrier for freight, the respondent set up, in defence, damage to the goods. The court being of opinion, that the carrier was liable for such damage, and that it ex-

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

ceeded the amount of the freight, dismissed the libel.

[Cited in Kennedy v. Dodge, Case No. 7,701; Ebert v. The Reuben Doud, 3 Fed. 522; The Two Brothers, 4 Fed. 159. See, also, Snow v. Carruth, Case No. 13,144; Thatcher v. McCulloh, Id. 13,862.]

In admiralty.

S. J. Thomas, for libellants.

J. Codman, for respondents.

SPRAGUE, District Judge. This is a libel for freight of a quantity of hemp and iron, from New York to Boston, in the schooner Granite State. There is no question, that the freight was earned. The defence is, that the hemp was damaged on the voyage, by oil and sea-water. Of the fact of such damage there is no doubt, and that it exceeded the amount of the freight; the only question is, whether the carrier ought to be held liable therefor. The master of the schooner signed a bill of lading in New York, in the usual form, acknowledging the receipt of the goods on board, in good order, and promising to deliver them in like good order, to the consignees in Boston, danger of the seas only excepted. It is not contended, that the deterioration of the hemp, in this case, arose from the nature or character of the article itself, that is, from any inherent quality or principle, but the damage arose entirely from its coming in contact with oil and sea-water, in the hold of the vessel. The bill of lading contains a contract in writing. There being no doubt that the hemp was received on board in good order, and no suggestion of any inherent defect or decay, the only question is, whether the damage was occasioned by the danger of the seas. It is insisted, indeed, on behalf of the carrier, that if he took the usual care and precautions, and conveyed these goods in the usual manner, he is not responsible for damage, whether arising from the danger of the seas or otherwise. To this I cannot accede. In order to exonerate himself from liability, he must bring himself within the exceptions of the bill of lading, and show that the damage arose from the danger of the seas. It appears that part of the hemp was stowed in the after-part of the vessel, upon other cargo, and this received no injury. The hemp which suffered was in the forward part of the vessel. On the one hand, it is insisted that the damage to this arose from the perils of the sea; on the other, that it was occasioned by improper stowage, or some want of reasonable care or skill on the part of the carrier. The schooner was put up in New York for freight for Boston, and after filling up, she sailed during the latter part of June, and arrived in Boston early in July. Nothing unusual occurred on the passage; she met with no accident, no bad weather, and encountered no unusual wind or waves. The ship's company consisted of seven persons, and of these, the testimony only of one sea-

man is produced. He says, that in coming round the cape the vessel careened, and the master, for that reason, took in sail, but he does not say to what extent; and taking in sail is one of the ordinary occurrences of a sea voyage. And he says, in express terms, there was nothing extraordinary or unusual in the passage from New York. In such a passage, in summer, with no bad weather and no bad sea, and with only so much wind as to cause them once to shorten sail, it would seem that such an article as hemp ought not to have suffered damage, on board of a seaworthy vessel, if properly cared for.

As to that part of the damage which was occasioned by oil, a considerable quantity of oil, in forty-gallon casks, was in the hold of this vessel, but not within twenty feet of the hemp; about 120 gallons leaked out, and with the water in the hold, came in contact with the hemp. There is nothing, whatever, to show that this leakage was occasioned by danger of the seas. The cooper at Boston testified, that the hoops were loose on two-thirds or three-fourths of the casks, and he is of opinion, that they could not have been in good order when taken on board. From one of the casks all the oil had escaped, except five gallons. How this oil was stowed on board, and whether properly secured or not, there is absolutely no testimony, the evidence as to stowage being confined to the hemp. The decision of Judge Story, in the case of The Reeside, [Case No. 11,657,] has a forcible application to this part of the case. Then as to the damage by water, it is suggested that this was occasioned by "blowing," as it is called, that is, by the water in the hold of the vessel being forced up through the seams of the ceiling, and thus thrown upon the hemp. It is not shown or contended, that there was any unusual quantity of water in the vessel, at any time, or any unusual motion. Indeed, the whole evidence is to the contrary; and it is said, that this blowing, when the ceiling is not caulked, is a common occurrence. Now, it would seem, that the carrier ought to take adequate measures to protect the cargo against a common and ordinary occurrence, which might and ought to have been foreseen. As to the stowage of the hemp, the evidence is not satisfactory. Of all the persons engaged in loading and unloading this vessel, the testimony of one only is produced, and he a common sailor, and he speaks only of what took place in New York. He says that he assisted in stowing, that the hemp forward was placed on a platform, with dunnage under it. When asked his opinion, whether it was properly stowed or not, he replied that he never stowed any better, but nowhere says that he had ever stowed hemp before, and on cross-examination says, that he never stowed any in the forward part of the vessel. Neither the mate, nor any other person engaged in unlading the vessel, is produced as a witness. The only evidence of the stowage, in Boston, comes from one of the port wardens, who expressed the opinion that the hemp was properly stowed. But he testified that he was not called upon to make any examination, until after a part of the cargo had been discharged, and that when he first went to the vessel, a part of the damaged hemp was on the wharf, and of that which remained in the hold, some appeared to have been moved, after the arrival of the vessel. Of course, he could not know from his own inspection, where it was during the passage, and must have relied for that fact upon the information of others, and they are not called as witnesses. He further says, that he saw no indications of there having been any unusual quantity, or uncommon motion of water in the vessel. On the whole, I am not satisfied that the damage to the hemp, either from the oil or the water, was occasioned by the danger of the seas, within the true meaning of the bill of lading, and as the amount exceeds the sum claimed as freight, the libel must be dismissed with costs.

NOTE, [from original report.] See The Martha, [Case No. 9,145;] Lamb v. Parkman, [Id. 8,020.]