## THE LYDIAN MONARCH.

*(District Court, D. New Jersey.   March 21, 1885.)*

1. CARRIERS OF GOODS BY WATER—BILL OF LADING — EXCEPTIONS — PERILS OF
   THE SEA—DAMAGE TO CARGO—BURDEN OF PROOF.
       Where a bill of lading, containing an exemption from liability for damages
   caused by perils of the sea, acknowledges the receipt of goods "in good order
   and condition," and such goods are damaged by sea water, it is incumbent on
   the carrier to prove that the loss was occasioned by perils of the sea.   Evidence
   *held* insufficient to show that the damage was caused by perils of the sea.

2. SAME—LIMITATION OF LIABILITY—INVOICE VALUE.
       A provision in a bill of lading that "the ship-owner is not to be liable for any
   damage to the goods  *  *  *  in any case for more than the invoice or de-
   clared value of the goods, whichever shall be the least," is reasonable, and will
   be enforced in case of damage to the goods; following *Hart* v. *Pennsylvania R.
   Co.* 7 FED. REP. 630; S. C. 5 Sup. Ct. Rep. 151; and *The Hadji,* 18 FED. REP.
   459.

Libel *in rem.*

*See & Bro.,* for libelant.

*Butler, Stillman & Hubbard,* for respondent.

NIXON, J.   The libel was filed in the case to recover damages for
injury to merchandise, to-wit, 21 bales or packages of burlaps, on the
voyage of the steam-ship Lydian Monarch from Dundee, in Scotland,
to the port of New York, the libel alleging that the master, officers,
and crew of said steamer so negligently and carelessly conducted them-
selves that one or more of the side-ports were insufficiently or inse-
curely fastened, by means whereof sea water ran into the said vessel
and upon the cargo, and greatly damaged the goods aforesaid.   The
shippers were James Duncan & Co., of Dundee, and the bill of lading
acknowledges that the said packages were received on board in good
order and well conditioned, and that they were to be delivered to the
libelant in New York in like good order and well conditioned, subject,
nevertheless, to a large number of exceptions and restrictions, which
it is not pertinent to the case to fully enumerate.   Among these lim-
itations to the liability of the ship-owners were the following:   They
were not to be liable (1) for any damage which arose from perils of
the seas; nor (2) in any case for more than the invoice or declared
value of the goods.

The steamer sailed from London on March 30, 1884, and arrived
at her port in New York, (Jersey City,) on the fourteenth of April fol-
lowing.   The consignees paid the freight and duties before the mer-
chandise was delivered to him.   When delivered from the ship, he dis-
covered that twenty-six or seven of the bales were more or less dam-
aged by sea water.   He sent at once for an insurance appraiser, Mr.
Cleveland, who examined the goods, and reported, as an expert, that
21 bales were badly damaged, and that the best disposition for all
concerned was to sell the same at public sale, giving interested par-
ties notice of the sale.   Acting on this advice, he sent the 21 bales
to the auctioneers Field, Chapman & Fenner, and gave notice to the

recognized agents of the steam-ship company, Patton, Vickers & Co., of the time and place of sale, and that the steamer would be held for all loss sustained. The sale was made, and the net proceeds realized were $3,110.87, from which sum the libelant claims should be deducted $43.25, the amount of the damages to the other bales not sold, and the further sum of $20 paid to the appraiser for his certificate of loss. He then proves the value of burlaps in good condition, in the New York market, on that day; claims that the bales sold were worth $3,771.47, and demands of the respondent the difference between these sums as the measure of his loss.

Two questions are thus presented: (1) Was the injury to merchandise caused by perils of the sea, for which the vessel is not responsible? (2) If not, has the libelant, under a proper construction of the bill of lading, sustained any damage for which the respondent is liable?

1. The bill of lading acknowledging that the burlaps was delivered to the steamer in good order and condition, and the proofs showing that it was damaged by sea water, it is incumbent on the respondent to prove that the loss was occasioned by perils of the sea. Failing in this, the company is liable for the damage sustained. *Hooper* v. *Rathbone*, Taney, 519. It seems to be acknowledged that the damage was caused by sea water leaking into the compartment where the goods were stowed through cargo port No. 4. The steamer has eight of these ports, four on each side, less than two feet square in size, through which the cargo is loaded until the lower side of the port is brought down to the water-line; they are then closed with an iron door on hinges, and secured with two cross-bars and four nutted bolts. The joints are made water-tight by the use of a mixture of white and red lead. This is necessary, as the ports are partly under water when the vessel is loaded.

The theory of the libelant is that cargo port No. 4 was negligently closed and fastened by the carpenter, whose duty it was to see that they were all made secure and water-tight before sailing. The respondent, on the other hand, assumes that it was properly fastened, but that the screws worked "slack" during the voyage on account of the rough weather which the steamer encountered. It is somewhat significant that, although the carpenter was on the stand as a witness, he was asked nothing about closing this particular port; and the only proof we have on the subject is the ordinary presumption that when one is charged with a duty he is supposed to properly perform it. It is also to be observed that, although it was the duty of the respondent to show that the leakage was caused by perils of the sea, we have no evidence of any storm, except general statements that the sea was rough at times, and the vessel labored heavily. I think the respondent has failed to show affirmatively that perils of the sea caused the damage.

2. The suit is based upon the claims of the libelant that the meas-

ure of damages which he is entitled to receive, is the difference between what was realized on the sale of the damaged goods, and their market value in New York at the time of the sale. It is conceded that this is the general mode of computing damages, in the absence of any agreement to the contrary. But these goods were shipped under a bill of lading which, in express terms, limited the shipper or consignee to a different and smaller rate of compensation in the case of loss. Its language is that "the ship-owner is not to be liable for any damage to the goods, * * * in any case, for more than the invoice or declared value of the goods, whichever shall be the least." Is such a limitation of liability on the part of the ship-owner one which the court ought to enforce? In analogy to the settled doctrine that a common carrier cannot relieve himself from the consequence of his own fraud by any stipulation in a bill of lading, the courts have been quite reluctant to give effect to any clause or contract which tends to lessen his liability, when the loss is occasioned by his own negligence, but it is now settled that they will recognize such limitations when they seem to be just and reasonable.

The question came before Judge McCRARY in the case of *Hart* v. *Pennsylvania R. Co.* 7 FED. REP. 630, which was a suit to recover damages for the negligence of the defendant company in transporting the plaintiff's horses from Jersey City to St. Louis. One of the horses, valued at $15,000, was killed, and others greatly injured. The shipper took from the defendant a bill of lading, containing amongst other things the printed condition: "That the carrier assumed a liability on the stock to the extent of the following agreed valuation: If horses, * * * not exceeding $200 each; if a chartered car, on the stock and contents in the same, not exceeding $1,200 for the car-load." The horses were not shipped in a chartered car, and the question was whether the limitation of $200 on each horse should be applied. The learned judge held that it was a just and reasonable limitation of the carrier's liability, and ought to be enforced, and directed the jury to assess the damages in a sum not exceeding $200 on each horse killed or injured. The case was carried up by writ of error, and the supreme court has recently affirmed the judgment of the court below. See *Hart* v. *Pennsylvania R. Co.* 5 Sup. Ct. Rep. 151.

In *The Hadji*, 18 FED. REP. 459, Judge BROWN, of the Southern district of New York, considered a stipulation of a bill of lading in the exact words of the contract in the present case to be just and reasonable, and in a well-considered opinion found abundant authority for so doing.

A decree must be entered for the libelant, and a reference ordered to ascertain the damages. The amount due must be adjusted upon the above principle of computation, and if it should turn out that the libelant has received from the sale of the damaged goods the invoice price, after deducting the costs of importation, sale, etc., the libel will be dismissed.