## THE GLIDE.

### HUDSON v. GRAFFLIN.

(Circuit Court of Appeals, Fourth Circuit. February 2, 1897.)

#### No. 181.

SHIPPING—DAMAGE TO CARGO—PERILS OF THE SEA—NEGLIGENCE.

Damage to a cargo of fertilizers, shipped on a barge from Baltimore to Norfolk, by sea water getting in through the hatches during a severe but not unusual storm, *held* to be attributable to negligent calking of the hatches and failure to cover them with tarpaulin battened down, as was customary with such cargoes, rather than to the "perils of the sea."

Appeal from the District Court of the United States for the District of Maryland.

This was a libel in rem by William H. Grafflin, as administrator of George Grafflin, deceased, against the barge Glide (George P. Hudson, claimant), to recover for damage to cargo. The district court

rendered a decree for the libelant, and the complainant has appealed.

Robert H. Smith, for appellant.

Frank Gosnell (T. M. Lanahan, on the brief), for appellee.

Before GOFF and SIMONTON, Circuit Judges, and BRAWLEY, District Judge.

GOFF, Circuit Judge. The appellee filed the libel in this case in the district court for the district of Maryland against the barge Glide. The appellant intervened as managing owner and claimant. The libelant claimed damages because of injury to a cargo of fertilizers which he had shipped on the barge at Baltimore, to be transported to Norfolk. The Glide sailed from Baltimore during the night of the 20th of February, 1893, in tow of the Virginia Ehrman, and arrived at Norfolk on the 22d of that month, with a portion of her cargo damaged by sea water. The libelant insists that it was the duty of the barge to carry the cargo safely, except such loss as might be caused to it by the act of God and the public enemy, and he specially claims that the captain and owners of the Glide were guilty of negligence in not properly securing her hatches by calking them, and afterwards covering them with tarpaulins securely battened down. The court below decreed in favor of the libelant, from which decree this appeal is prosecuted.

The appellant claims that the district court erred in finding the Glide in fault, and her owners liable for damages to the cargo. He insists that the damage was caused by dangers of the seas, and that, therefore, the barge was exempt from liability. The owners of the Glide, in receiving the cargo, and receipting for the same, contracted for the safe custody, due transportation, and proper delivery of the 507 tons of fertilizers, belonging to the libelant. It was to have been so delivered at Norfolk in as good order and condition as when shipped. It is so well established and now universally admitted that the contract to transport implied that the barge was reasonably fit and suitable for the service which the owners engaged to perform, and that she was in condition to encounter such perils of the sea as a vessel of that kind, with a cargo of that character, laden in the way she was, may be fairly expected to encounter in a voyage from Baltimore to Norfolk, that argument is not required, nor is the citation of authorities necessary, to sustain the same.

We think the evidence clearly shows that the Glide, when she sailed from the port of Baltimore with the cargo of appellee on board, was seaworthy, and in every way fitted for the voyage to Norfolk, concerning which she was then under contract. That the cargo was damaged when it reached Norfolk is beyond question,—is, in fact, admitted. The only matter we have to determine is, was the damage caused by the vis major, or by the carelessness of the masters and owners of the barge. That the Glide, during her voyage, encountered a severe storm is clearly shown. The sea was heavy, the waves rolled over the barge, and the wind blew strong.

The tug at the same time had in tow the barge Dixie, also laden with fertilizers, and her cargo was also damaged, but slightly, as compared with that of the Glide. The tug Peerless, with a tow of two barges and a bark, left the port of Baltimore very soon after the Virginia Ehrman left with the Glide, and encountered the same storm. Her mate describes the storm as very severe, and says they let go of and anchored the bark, and took the barges into harbor, coming out, and proceeding to Norfolk the next morning. The cargoes of these two barges consisted also of fertilizers, and they reached the point of destination, Norfolk, without damage. The storm, though quite severe, was not unusual, and the fact that other barges and other tugs passed through it without damage indicates, at least, the absence of the elements necessary to constitute the interposition of the vis major, and suggests that, had there been more attention paid to the safety of the cargo and to the management of the barge, there would have been no necessity to subsequently rely upon the perils of the sea.

The damage to the cargo of the Glide was caused by the sea water entering at the hatches, and saturating the bags of fertilizers immediately thereunder. There were four regular hatches on the Glide, which appear to have been properly constructed, and well supplied with covers fitting flush with the top of the coamings. But we are forced to the conclusion, from the evidence, that they were not properly calked, and the testimony is uncontradicted that the barge used no hatch cloths or tarpaulins during any time of the voyage, not even when the sea was washing over the hatchways. The weight of the testimony shows that the custom at the port of Baltimore, especially with perishable cargoes, was for barges to calk the hatchways securely, put the tarpaulins on, and batten them down. The Glide had no tarpaulins previous to the voyage during which this cargo of fertilizers was damaged, but immediately thereafter she procured them. The hatches of the Dixie, the barge in tow with the Glide, as also those of the two barges in tow of the Peerless, were properly calked, tarpaulined, and battened down. No effort was made to calk the hatches of the Glide until after she left the port of Baltimore, and it is evident, to say the least, that the work was not well done, and, even then, if they had been securely tarpaulined, the damage would most likely have been obviated. While it is true that the damage was caused by the storm, yet it is also true that it could have been prevented by the exercise of reasonable skill and proper seamanship, and therefore the loss was not occasioned by the perils of the sea, and the carrier was not exempt from liability therefor. We cannot say, from the evidence found in the record, that the damage to the cargo of the Glide was produced from causes extraordinary in character and irresistible in force, that could not have been anticipated by human skill, and guarded against by proper exertion and prudent seamanship; and, consequently, it follows that we must find that the master and owners of said barge are liable to the appellee for the damages found by

the court below. Bearse v. Ropes, 1 Spr. 331, Fed. Cas. No. 1,192; The Reeside, 2 Sumn. 567, Fed. Cas. No. 11,657; Story, Bailm. § 512a; The Chasca, 32 Law T. (N. S.) 838; The Svend, 1 Fed. 58; The Bark Kate Irving, 5 Fed. 633.

We concur fully with the learned judge who decided the case below, and the decree appealed from is affirmed.