## Case No. 6,615.

### HOLLINGSWORTH v. DUANE.

[Wall. Sr. 51.][1]

Circuit Court, D. Pennsylvania. May 18, 1801.

CITIZENS—PLEA IN ABATEMENT — ASSESSMENT OF DAMAGES—VENIRE DE NOVO.

1. Where the defendant was born in the colony of New York, in 1760. of Irish parents, and in 1771 went to Ireland, and was educated and served his apprenticeship there, and remained in the British dominions until 1795, and then returned to America, he is not a citizen of the United States.

2. On a plea in abatement, if the jury find against the plea, they ought to assess the damages on the plaintiff's declaration; if this is omitted, a venire de novo must be awarded.

This was an action on the case for a libel on the plaintiff, in the Aurora, a newspaper published by the defendant. [The defendant had moved for a postponement, but had been overruled. Case 6,614.] The declaration stated the plaintiff to be a citizen of the United States, the defendant to be an alien, and subject of his Britannic majesty. The defendant pleaded in abatement to the jurisdiction of the court, "That long before the action was brought, and at the bringing of it, and at the time of his plea, he was a citizen of the state of Pennsylvania, and not an alien and subject of his Britannic majesty; and because the plaintiff was also a citizen of the same state of Pennsylvania, therefore by the constitution of the United States, the said circuit court had not jurisdiction over the parties," &c. To this plea there was a repli-

[1] [Reported by John B. Wallace, Esq.]

cation by the plaintiff, to which the defendant rejoined, and thereupon issue taken.

Mr. Ingersoll (with whom was Tilghman), for plaintiff, opened the cause, by observing very briefly, that the only principal matter of inquiry on this issue was, whether the defendant was a citizen of the United States or an alien. If he was a citizen of the United States, then his plea of being a citizen of the state of Pennsylvania could be proved; and in that case he admitted the court had no jurisdiction; because the constitution gave the federal court no cognizance of such a case between citizens of the same state; but if, from the evidence, it should appear that the defendant was an alien, or subject or citizen of some other or foreign power or state, then his plea failed, and he must answer to the action for the libel, in this court. He mentioned, that he was not minutely informed as to the evidence which could be adduced to prove the defendant an alien, but he understood it would appear in a very clear manner, that this was the fact; and as the burthen of proof lay on the party alleging the other to be an alien, he should proceed to call the witnesses.

Mr. Dallas, for defendant, said, that his client was an American by birth, and from thence derived his right to the claim of a citizen of the United States of America: that he conceived the only question to be tried was, whether the defendant was born within the limits of the American colonies. If that was proved he thought there was an end to the question, and the jury bound to find him, not an alien, but a citizen of the United States. He proposed to call one or two witnesses, who, he stated, would prove his birth to have been within the colony of New York. The only proof of the place of his birth arose from his own declarations to some of the witnesses. One of them stated, that according to the best of his recollection, the defendant had once told him that he was born in Canada; but of this he was not certain.[2] Another of the witnesses, however, who had been present at the same conversation, and whose recollection appeared to be perfect, said the other witness had been mistaken, as the defendant then stated the place of his birth to be on Lake Champlain, within the bounds of New York, but near to Canada. This witness further stated, that the defendant had repeatedly told him of his birth in the colony of New York, as he received it from his mother. The remainder of the evidence may be collected from what fell from the judges. After the evidence on both sides had been rested, the counsel immediately mentioned to the court, that they had agreed to submit the case to the jury, without argument, under the opinion of the court in point of law, whether the

defendant was, upon the evidence, a citizen of the United States, or an alien.

GRIFFITH, Circuit Judge. Before we charge the jury, I wish the court to understand, whether (taking the relation of the defendant himself as evidence for him on this issue[3]) the facts on which he relies, in proof of his claim to be an American citizen, are as follows: That his parents were natives of Great Britain or Ireland, and previous to the year 1760, settled on the borders of Lake Champlain, within the limits of the British colony of New York; that the defendant was born there about the year 1760, and lived there with his parents, and the surviving parent, his mother, till he was seven or eight years of age; that his mother then removed from the colony of New York into that of Pennsylvania, and resided with him in the city of Philadelphia, in which place he went to school; that about the year 1771, he then being eleven years old, his mother removed with him to her former residence, in Clonmell, in Ireland; that he there completed his education; and somewhere in Ireland served an apprenticeship to the art of printing; that he came of age in 1780 or 1781, and after the peace, in 1783 or 1784, was pursuing his business as a journeyman printer in the city of London, which place he left about those years, and went into the British East Indies, where he resided until the year 1795, when he came into Pennsylvania, and has since resided there: and the question is upon these facts whether he is a citizen of the United States? The counsel for the defendant said that the statement was correct, and that their client relied upon it as entitling .him to his claim of citizenship.

Mr. Dallas, for defendant, here said, that before the court charged the jury, he wished to read the case of William Smith, of South Carolina, which he thought applicable to the plea of the defendant.

CURIA. Certainly. Mr. Dallas; we should be very desirous of hearing all that can be suggested on either side.

Mr. Dallas then read the Case of William Smith, from Debates of Congress, fols. 190, 383, 391, and made some observations, with a view to establish his proposition, that birth in the colonies conferred a right of becoming a citizen of the United States, in the circumstances of his client.

The counsel for the plaintiff made no remarks, but submitted the case to the opinion of the court.

TILGHMAN, Chief Judge, after a few minutes conference on the bench with BASSETT and GRIFFITH, Circuit Judges, charged the jury as follows:

The single question for you to decide on

---

[2] This was a witness called for the plaintiff.

[3] No objection was taken by the counsel for plaintiff to the defendant's own declarations.

this issue is, whether the defendant be a citizen of the United States, or an alien. It is your undoubted province to decide on the truth of material facts, alleged on the one side or the other. These facts being settled in your minds, it is the province of the court to direct your judgments on the law, which arises between the parties out of the facts. In this case, the facts necessary to form a legal decision, and which you are to take as the foundation of your verdict, seem to be sufficiently settled. There is, indeed, some doubt upon the evidence, whether Mr. Duane was born in Canada or the province of New York. This question is to be decided by you. If you think from the evidence that he was born in Canada, then the whole foundation upon which his claim to citizenship rests fails; for in 1760, at his birth, Canada was a part of the French territory. Taking the fact, however, to be as stated by the defendant himself, in conversation with the witnesses who have been produced on his behalf, (and we think the probability is on that side,) viz. that he was born within the British colony of New York, in the year 1760, and removed with his mother to Ireland in 1771, at the age of eleven years, and continued within the British dominions during the revolution, and until 1795, under the circumstances before enumerated by Judge GRIFFITH, and assented to by his counsel—I say, taking his own statement as true, it is the clear opinion of the court, in point of law, that Mr. Duane was not, when he put in this plea, and is not now a citizen of the United States, but an alien. It is not the intention of the court, on a sudden, to enter upon a discussion of supposable cases, wherein the place of birth might confer a right of election on the party, at any indefinite time, to make that circumstance a ground for his claim to citizenship. We confine ourselves to the case before us. We are of opinion that there has been no period until this time, at which he became a citizen of the United States. At his birth, he was a subject of the king of Great Britain, as much so as if he had been born in Great Britain or Ireland. We were all so, at that time. In 1776, at the Declaration of Independence, he was permanently settled in Ireland, receiving his education, or learning his trade. After he came of age, which much have been in 1781 or 1782, we find him settled in business in London, and from thence in 1783 or 1784, going out to the British possessions in India, where he resided until the year 1795, when and whence he came to Pennsylvania. It seems to be the idea of his counsel, that because born in the colony of New York, and removed from the place of his nativity while an infant, he might re-claim his country in her state of independence, after he came of age. Without giving any opinion on this right of election, in such circumstances as the present, it is a sufficient answer to it in this case to say, that he made no such election. He indeed told Hickey in 1782 or 1783, that he had intentions of going to America, and according to Mr. Goodfellow's relation, Mr. Duane told him, that while he was in the British East Indies, he, on some occasion, made claim to be an American citizen. But no one can, for a moment, view such declarations as these, as amounting to an election of citizenship in the United States in virtue of his birth-right. If such a right did exist, he should, immediately on his coming of age, or as soon after as he could, have taken on him the actual character of a citizen of the United States. Instead of this, he remains from the year 1781, when he came of age, to 1795, within the British dominions; having in all that time done no act, or made any application, nor been recognized by any authority of either nation, as a citizen of the United States. Suppose he had been found in arms against the United States in 1782, after he came of age, must he not have been treated as a British subject? Could he have been hung as a traitor, on the ground of his having been born within the colony of New York, in the year 1760? Certainly not. Upon the whole, we entertain no doubt on this question, in point of law. We do not consider the defendant as ever having entitled himself to those great privileges and rights of citizenship which resulted to the people of the colonies, in consequence of the Declaration of Independence, the war which ensued, and the final recognition of them as independent states. If Mr. Duane can, merely in consequence of his birth in 1760, in a British colony, after a permanent removal from the year 1771 to 1795, a space of 24 years, and a residence within the British dominions as a British subject, come here and claim to be a citizen of the United States, it would be difficult to say who might not make such claim, or when a limitation would attach. The case of the Honorable Mr. Smith, which has been mentioned as parallel to Mr. Duane's, bears no resemblance to it. It differs in every circumstance. It would be wasting time to note the circumstances of discrimination. You have, then, gentlemen, the unanimous opinion of the court, delivered in haste, and without that precision of language which perhaps might be more impressive, that Mr. Duane, upon his own evidence, is not in law a citizen of the United States, but an alien. If you are of this opinion, upon the facts, you will find a verdict accordingly. On the contrary, it is your right to find him a citizen of the United States, if, upon the law and facts, you are of that opinion.

BASSETT and GRIFFITH, Circuit Judges, merely assented to the charge, without delivering any reasons.

GRIFFITH, Circuit Judge, observed to Mr. Dallas, counsel for defendant, that as

the matter was important to his client, and the point might be thought worthy of more consideration or revision, he would remind him, that if the opinion of the court was thought erroneous, the defendant might take a bill of exceptions, and have the question decided in the supreme court of the United States. Or if his counsel preferred a re-consideration in this court, he should be at liberty to move for a new trial, for the misdirection, if the jury should find against the defendant. The counsel for the defendant seemed to acquiesce in the opinion of the court, declining to take a bill of exceptions.

The jury retired for about two minutes, and returned a verdict, that the defendant was not a citizen of the United States, but an alien and subject of the king of Great Britain, which was entered accordingly.

NOTE. After the evidence relative to the alienage of the defendant was rested, some question arose whether, on this plea in abatement, in case the jury found for the plaintiff, it was proper for them to assess the damages against the defendant on the declaration. The counsel not having looked into the practice, agreed generally, that no prejudice should arise from the omission of it, if that should be the course of proceeding. The jury therefore only found a verdict on the point of the plea. The next morning, it was stated by the plaintiff's counsel, that upon examination, they were satisfied the jury ought to have assessed damages for the libel (Eichorn v. Lemaitre, 2 Wils. 367); and the question now was, what ought to be done. Mr. Ingersoll, for the plaintiff, moved, that the court should charge a jury under a law of the state. Province Laws, p. 116, § 27. But the defendant's counsel superseded this motion by consenting, "that a venire de novo should go on the issue in abatement, and a special jury should be struck; but that on the trial the jury should find for the plaintiff on the issue of alienage, and assess the damages for the libel; on which assessment the defendant should be at liberty to offer in mitigation of the damages, any evidence which might be legally given on the general issue joined."
[Subsequently Mr. Dallas, for the defendant, moved to set aside the verdict in this case because the foreman of the jury which gave the verdict was an alien, of which fact the defendant was ignorant at the time of impaneling the jury. Griffith, Circuit Judge, overruled the motion. Case No. 6,618. See, also, Cases Nos. 6,616, 6,617, 14,996, 14,997, and 16,654, all on questions as to contempt of court during the proceedings in this case.]