## The James A. Garfield.

*(District Court, S. D. New York. June 30, 1884.)*

1. PILOTS—DUTY OF—UNKNOWN OBSTRUCTIONS—EAST RIVER—COSTS.
   A pilot is not an insurer. He is only chargeable for negligence when he fails in due knowledge, care, or skill, or to avoid all obstructions which were known or ought to have been known to him.
2. SAME—INJURY TO TOW—COSTS.
   The schooner J. B. O., drawing 17½ feet of water, while in tow of the tug J. A. G., ran upon the edge of an obstruction in the East river, 400 to 500 feet easterly from the Nineteenth-street buoy, (Nes Rock,) near mid-channel. Shortly before the trial, the existence of a pinnacle rock 4 yards square on the upper surface, and 12½ feet below low-water mark, was for the first time discovered and located in the precise region where the schooner struck. *Held,* that the schooner had struck upon the edge of the newly-discovered rock, previous ignorance of which was not a fault, and that the pilot having pursued the customary course, the tug was not liable for the damage; but, as the facts seemed to warrant the suit, the libel was dismissed without costs.

In Admiralty.

*Owen & Gray,* for libelant.

*Beebe, Wilcox & Hobbs,* for claimant.

BROWN, J. The libel in this case was filed to recover damages for alleged negligence in the pilot of the steam-tug James A. Garfield, in running the schooner James B. Ogden, which was in the tow of the

steam-tug, on the reef of rocks near the buoy off Nineteenth street, in the East river, on the twenty-second of January, 1882. The answer alleged that, before taking the schooner in tow, the pilot was assured that the schooner drew but 17 feet of water, and that the route taken by the pilot was where there was more than that depth of water, and where there were no known obstructions for vessels of that draught. The schooner was bound for the Manhattan Gas Company's dock, between Fourteenth and Sixteenth streets, East river; and in coming up the East river with the flood-tide, the ordinary safe course, which was the one pursued in this case, is to go to the eastward of the Tenth-street and the Nineteenth-street buoys, and to round the latter buoy to the northward, and come down between it and the New York shore. The schooner was lashed upon the starboard side of the tug, and as they were rounding the Nineteenth-street buoy, and at a distance from it variously estimated at from 50 to 500 feet, the schooner suddenly struck the bottom, keeled over a little to starboard, and in a moment after swung clear. At the time she struck, the Nineteenth-street buoy, which is over Nes ("Easby") Rock, bore about two or three points on the port bow of the schooner, and the latter was heading for the New York shore at somewhere about Thirtieth street.

The weight of evidence is clearly to the effect that the schooner passed much further off from Nes Rock than 50 feet, the lowest estimate above given, and that she was at least two or three lengths distant from it. She was about 165 feet long. Nes Rock, according to the chart of the harbor, is $14\frac{1}{2}$ feet below mean low water. The average tide in this harbor is 43 inches. It was high water at Governor's island at 1:21 P. M. on the day of this accident, and, although the tide was still running flood, as it was then near high water, there must have been about 18 feet of water immediately over Nes Rock, and much more on all sides of it, as its surface is but about four square yards, and its sides are precipitous. The schooner drew but $17\frac{1}{2}$ feet at her stern, and 17 feet forward; and there would seem to be no reason, therefore, for her grounding upon or very near to Nes Rock, irrespective of the master's alleged statement that she drew but 17 feet.

I am satisfied that the true explanation of the grounding in this case is to be found in the recent discovery of another rock, which was first discovered in May of this year, to the eastward of Nes Rock, only a few weeks before the trial of this cause. In that month the new Sound steamer Pilgrim, drawing from 12 to 13 feet, tore a hole in her bottom in passing at what was supposed to be a safe distance to the eastward of Nes Rock. This led to a re-examination and survey by the officers of the United States coast survey, who, under date of May 31, 1884, have reported a notice to mariners (No. 48) of a "dangerous rock in the East river," described and located as follows: "A pinnacle rock not over four yards square, and situated 150 yards out-

side of Nes Rock, and on the prolongation of Twentieth street, New York city. It is 130 yards west of the central line of the channel, and on the following bearings: N. E. corner of Cob dock, (navy-yard,) S. by W.; Burnt Mill point, W. S. W. ½ W.; S. E. corner of Bellevue hospital, N. N. W. The least water found over the rock was 12½ feet." It is now marked by "a buoy with red and black horizontal stripes, which may be passed on either hand."

Incredible as the existence of such a rock without previous discovery might seem to be, in a pathway so long traversed by vessels of a sufficient draught to strike it, there can now be no doubt of the fact. Its distance from Nes Rock is 150 yards, or 450 feet, which is less than three lengths of the schooner, and agrees well with considerable of the testimony as to the location where this schooner struck. At that time there was probably about 16 feet of water over this pinnacle rock. The schooner probably grazed the north-easterly border of it, gliding off quickly and doing her some damage, but not breaking any hole in her bottom. There is no other known obstruction in the vicinity of the path of the schooner, as established by the evidence, that was not at this time more than 17½ feet below the surface of the water; and from this fact, as well as from her distance from Nes Rock, I can have no doubt that the schooner struck upon the newly-discovered pinnacle rock. A pilot is not an insurer. He is only chargeable for negligence when he fails in due knowledge, care, or skill, or to avoid all obstructions which were known or ought to have been known to him. *The Margaret*, 94 U. S. 494; *The M. J. Cummings*, 18 FED. REP. 178; *The Niagara*, 20 FED. REP. 152. The course followed by him in this case was the customary one, and nearly in mid-channel. The existence of this obstruction was previously unknown. No fault can be ascribed to him in not knowing of its existence, and consequently he is not liable for the accident. The libel must therefore be dismissed; but, as the circumstances seemed to warrant the institution of the suit, the dismissal should, in this case, be without costs.