THE MODOC.

Evans, Owner, etc., v. North-Side Bridge Co.

*(District Court, W. D. Pennsylvania. February 6, 1886.)*

1. NAVIGABLE RIVER—CONSTRUCTING BRIDGE—PILES.
    A company authorized to construct a bridge over the Allegheny river, in the course of the work, may lawfully drive piles in the bed of the river at a pier-site; but if, at an ordinary flood-stage, such piles are likely to become a hidden and dangerous obstruction to navigation, it is the duty of the company to mark the place distinctly by a buoy, or otherwise, even although the submerged caisson and piles might create a break on the surface of the water which a skillful navigator would observe in daylight and understand.

2. SAME—BACKING STEAM-BOAT AGAINST PILES.
    A steam-boat, the pilot of which knew that the submerged piles were there, is chargeable with negligence in backing towards the place of danger in daylight, without having a lookout at the stern of the boat to give warning to the pilot.

3. SAME—VESSEL SUNK—NEGLIGENCE.
    The steam-boat having struck the submerged and unmarked piles, and sunk, *held,* that both parties were in fault, and the damages should be equally divided.

In Admiralty.

*Knox Reed,* for libelant.

*W. B. Rodgers,* for respondent.

ACHESON, J. The defendant company, having lawful authority to erect its bridge over the Allegheny river, undoubtedly had the right to drive piles in the bed of the river, as was done here; but, in the exercise of that right, the company was bound to observe all reasonable precautions to secure the safety of boats navigating the stream; and if, at an ordinary flood-stage of the river, such piles were likely to become a hidden and dangerous obstruction to navigation, it was the duty of the company to mark the spot by a buoy, or otherwise, so as to put approaching boats on their guard; and, although the sub-

murged caisson and piles might create a break on the surface of the water, which a skillful navigator would, in daylight, observe and understand, still the full measure of duty to the public would be met only by distinctly marking such place of danger.

The testimony is very contradictory, as to whether or not the piles in question were concealed underneath the water at the time of the sinking of the Modoc. I see no reason to doubt the integrity of any of the witnesses; but, on the one side or the other, mistake there must be. Possibly, the elevated situation of some of the respondent's witnesses enabled them to see the heads of piles, which in fact were beneath the water, and not visible to persons in other positions. But, even if the respondent's witnesses are correct, only two or three of the piles, at the most, were in sight, and these projected above the water less than a foot. I think, however, the clear weight of evidence upon this point is against the respondent. That all the piles were under water, the two Merringtons, O'Neill, and the engineer, Evans,—each of whom made a particular examination the evening of the accident, or the next morning,—positively testify. This testimony, which comes from the libelant's side, is strongly confirmed by a fact mentioned by James Wells, one of the respondent's principal witnesses. He testifies that at 5 o'clock P. M. of the day next after the casualty, the highest pile stood only six or eight inches out of water. Now, this was 24 hours after the sinking of the Modoc, and the river had been falling in the mean time. Upon the whole proofs, my conclusion is that all the piles were covered by water when the Modoc was injured.

The stage of water was about 11 feet. This was not an unusual stage. The site of the pier in question was in the harbor of Pittsburgh, near one of the public wharves, and at a place where boats were accustomed to ply. I am, then, of opinion that on the part of the respondent there was negligence contributing to the catastrophe which befell the Modoc, in that the sight of the submerged work was not marked.

But was the Modoc herself free from fault? The work at this pier was begun about the middle of December, 1883. In the interval between that date and the time of the accident, February 23, 1884, the Modoc was much about that part of the river, and once took a flat from the very place where this work was in progress. Indeed, it is definitely proved that her pilot knew the piles were there. On the occasion of the disaster the Modoc had rounded in below the site of the bridge to take out an empty flat which lay at the Pittsburgh shore. After hitching to the flat, she proceeded to back up stream towards the piles. Now, under the circumstances,—backing towards a known obstruction under the surface of the water,—good boatmanship assuredly required that a lookout be kept at the stern of the Modoc. It was broad daylight, and there was such a break in the surface of the water, over the site of the pier, that any person on watch at the stern of the boat could have seen the danger, and, by

warning the pilot, averted the mishap; but no such measure of safety was observed. Without further discussion of the evidence, I content myself with saying that it clearly convicts those employed on the Modoc of negligence which contributed to the disaster. Admissions to this effect, of the libelant himself, are among the proofs.

The case, then, being one where both parties were in fault, justly falls within the rule enforced in *Atlee* v. *Packet Co.*, 21 Wall. 389, and the damages should be equally divided between them.

This brings us to a consideration of the amount of damages. The libelant's bill is for $1,782.15, but there are admitted deductions to be made, amounting to $49. Then the item of $6.40, for "steerage blocks and steel bolts," is to be stricken off for lack of proof. It would have been more satisfactory had there been distinct proof of the time occupied in repairing the boat. But here I will accept the claim as made. It seems right enough to pay the wages of the crew for the lost time, but I see nothing in the evidence to warrant such allowance to the libelant, who was not under pay. Hence the $80 claimed by him must be disallowed. The bill embraces a *per diem* claim "for lost time of boat," and the charge is $10 a day for 25 days, and $15 a day for 7 days. This difference in rate, it would seem, is entirely arbitrary. Aside, however, from this consideration, there is an utter want of evidence to sustain the claim. If allowable, it must be on the ground of a loss of net earnings, for the wages of the crew are provided for. But there is no proof that the Modoc lost employment; nor, indeed, is anything shown by which to measure her net earnings had she been employed. Upon a claim of this nature the general assertion of the libelant, in the course of his examination in his own behalf, that his bill is correct, does not rise to the required standard of proof. This claim, therefore, must be rejected. Correcting the libelant's bill as above indicated, leaves the damages at $1,291.75.

Let a decree be drawn in favor of the libelant for one-half the above damages and half costs.