## THE NONPARIEL.

### THE WILLIAM HENGERER.

#### (District Court, W. D. New York. September 7, 1905.)

1. CANALS—CONSTRUCTION OF BRIDGES—AUTHORITY OF STATE.

A state has complete power over navigable water courses within its boundaries, and may authorize and supervise the construction of bridges over public canals or other waterways, subject, however, to the power of the federal government to remove unnecessary obstructions to navigation.

2. SAME—RAILROAD BRIDGE—OBSTRUCTION OF NAVIGATION.

A railroad company, although having the right under state authority to erect an abutment and pier for a bridge over a public canal, if it maintains the same so as to create hidden or dangerous obstructions to navigation and to cause injury to crafts rightfully using the canal, is liable for such injury.

3. SAME—LIABILITY FOR INJURY TO VESSEL.

A railroad company, which maintained a bridge over the Erie Canal, with piers resting on submerged cribs extending beyond the piers on the canal side, which were not protected or marked in any way to show their location, *held* liable for the injury of a canal boat and the damage to her

cargo resulting from her collision with such crib, which was not apparent to her master, who exercised ordinary skill and care in her navigation.

4. SHIPPING—CARRIER AS BAILEE—SUIT TO RECOVER FOR DAMAGE TO CARGO.

A carrier by water of merchandise is a bailee, and has a special property therein which entitles him to maintain a suit for its loss or injury in behalf of all parties in interest, and such right is not defeated by the fact that the loss has been paid by an insurer.

5. SAME—USE OF TRADE-NAME IN CONTRACT OF AFFREIGHTMENT.

The fact that the owner of a vessel is doing business under a fictitious or trade name, and that contracts of affreightment are made in such name, will not defeat his right to maintain an action in his own name to recover for damage to a cargo.

In Admiralty.

Clinton & Clinton, for libelant.
Pooley & Spratt and John K. White, for claimant.
Harvey L. Brown, for canal boats.

HAZEL, District Judge. This proceeding was instituted against the claimant, a railroad corporation, to recover damages sustained by the libelant in consequence of a collision in the Erie Canal of the canal boat Nonpariel with a submerged wooden crib surmounted by a pier. Such pier or abutment, together with several others, supported the railroad bridge of the claimant across said canal and adjacent waters of Tonawanda creek. The mishap occurred at about 1:30 o'clock a. m. on May 14, 1901, at Tonawanda, N. Y., while the Nonpariel was being pushed by the steam canal boat William Hengerer, which also had in tow two other canal boats not involved in this controversy. The canal boats named were brought in on petition of claimant under admiralty rule 59. They were securely lashed together tandem fashion, and were proceeding westwardly in the Erie Canal, bound for Buffalo, N. Y. The weather was favorable, excepting a slight haze, which, however, did not obstruct the view of the commandant of the tow and in no way contributed to the accident. About 1,000 feet easterly of the abutments referred to, there is a bend in the canal, from which point the piers of the bridge can be plainly seen. The distance between the towpath and the abutment with which the Nonpariel collided is about 70 feet. On the night in question the master of the tow stood watch on the Nonpariel. From the time of turning the bend in the canal his ability to observe objects in his course became impaired and obscured by reason of the glare from strong reflector lights upon an approaching canal boat and scow drawn by horses on the towpath side of the canal. Immediately upon seeing such boats, which were proceeding eastwardly about 50 feet from the canal bank, and to keep clear of them, the speed of the Hengerer was reduced from 3 to 2 miles per hour and her helm ported; the tow going starboard toward the berm bank. Soon afterward, while proceeding in the canal and creek, the master of the tow again altered his course to port. He was then approximately 60 or 75 feet from the abutment and heading toward it. He was unable to clear the submerged crib upon which the abutment rested, and accordingly the Nonpariel collided with it and stove a hole in her bow. The injured boat was 98 feet long; 17 feet 6 inches

beam, drawing 6 feet of water, and was steered by the rudder on the Hengerer. Directly after the impingement she sunk to the bottom of the canal and her cargo of sugar was extensively damaged. The submerged cribbing extended in an easterly direction toward the approaching boat about 6 feet beyond the end of the pier, and upon the southerly or canal side of the pier it projected about 1 foot.

The navigability of the creek as a separate waterway or as a part of the Erie Canal is in sharp conflict. Evidence was given tending to show that Tonawanda creek was a navigable stream, though in different parts near the place of collision its waters were concededly shallow. Passing canal boats did not navigate on the northerly side of the pier, but invariably remained in the canal, on the southerly side thereof. Capt. Kill, master of the tow, a competent navigator of canal boats, was thoroughly familiar with the bridge, the abutments spanning the canal and creek, and their distances from the canal bank. The facts show that the glare from the lights on the approaching canal boats did not prevent him from seeing the towpath, yet he was unable, on account thereof, to see the abutment until close to it. As he neared the bridge, the moving reflector lights, which were then west of the abutment, became brighter. Although proceeding cautiously, he was unable to plainly observe objects in his pathway until the Nonpariel reached a point about 60 or 75 feet distant from the pier. He endeavored to avoid the collision with the abutment by a seasonable maneuver of his helm, and probably would have cleared the same, had not its crib extended about 1 foot into the canal beyond the invisible bank. The contention of claimant that the injury to the canal boat was sustained solely on account of bad seamanship is not supported by the proofs.

Libelant contends, inter alia, that, as the waters of Tonawanda creek were canalized, such creek was a navigable stream, within the legal definition of that term, and the erection of the abutments in question was presumptively illegal and a public nuisance. The principle of law governing this contention is quite clear; but, as this action was not brought to remove objectionable piers and bridges, the legal navigability of Tonawanda creek is not strictly necessary to a decision of this controversy. Assuming Tonawanda creek, however, to be public waters of the United States, it is nevertheless shown by the evidence that in canalizing the same a well-defined channel for the safe passway of canal boats was established. Conceding that Congress did not authorize the construction and maintenance of the bridge and pier in question, and that they were not erected in accordance with federal supervision, the evidence of claimant, nevertheless, indicates that the state exercised authority and control over the waters in question. It is incontrovertible that the state has complete power over navigable streams and water courses within its boundaries, and it may authorize and supervise the construction of bridges over canals, rivers, and waterways within its limits, reserving, however, to the federal government the power to remove unnecessary obstructions to navigation. Escanaba v. Chicago, 107 U. S. 678, 2 Sup. Ct. 185, 27 L. Ed. 442; Transportation Company v. Parkersburg, 107 U. S. 698, 2 Sup. Ct. 732, 27 L. Ed. 584; Willson v. Blackbird Creek Marsh Co., 2 Pet. 245, 7 L. Ed. 412. The pier

in question was erected by authority of the general railroad law of the state and by express permission of its officers having authority in the premises. Whether such permission was properly exercised, or whether the abutment endangered safe navigation, is a proposition with which we are principally concerned. If, by erecting an abutment or series of abutments to support a bridge, the waterway or channel is made unsafe, and vessels are hindered or obstructed in their navigation, then by reason of such hindrances or interference, if unexplained, a liability is established. Such is the holding of the cases. Blanchard et al. v. Western Union Telegraph Co., 60 N. Y. 510; Casement v. Brown, 148 U. S. 615, 13 Sup. Ct. 672, 37 L. Ed. 582; Vessel Owner's Towing Co. v. Wilson et al., 63 Fed. 626, 11 C. C. A. 366; Harrison v. Hughes, 125 Fed. 860, 60 C. C. A. 442; The Modoc (D. C.) 26 Fed. 718; Clement v. Metropolitan West Side El. Ry. Co., 123 Fed. 271, 59 C. C. A. 289.

So that in this case the claimant railroad company, though having the right to erect the abutment and cribbing, must nevertheless maintain the same so as not to create hidden or dangerous obstructions in navigation or to cause injury to crafts rightfully using the canal. From the proofs it is evident that the cribbing or caisson, as already stated, projected a submerged ledge or step in the creek and also in the canal. It was the plain duty of claimant to safeguard such obstruction, which endangered safe navigation, or to ̇ distinctly mark the place by spring piling or otherwise as would afford ample protection to boats lawfully navigated in the ordinary manner. Although acquainted with the channel and its surroundings, the master of the tow did not know of the existence of the submerged obstruction. He had frequently passed under the bridge and alongside of the abutment; but, its dangerous character not being apparent, he cannot be held in fault. The Pierrepont (D. C.) 42 Fed. 687; The James A. Garfield (D. C.) 21 Fed. 474; Wilson v. Charleston Pilots' Ass'n et al. (D. C.) 57 Fed. 227. He was bound to exercise ordinary skill and diligence in the management of the tow, and the evidence does not disclose the omission of this obligation. If the abutment had been properly guarded, and marked or illuminated to give warning of danger, his negligence or concurring negligence probably would be perceivable.

Claimant contends that the character of the hole in the bow of the Nonpariel, considered in connection with the testimony as to her distance from the abutment and from the towpath, discloses that she did not strike the projection of the cribbing in the canal, but that in fact she came in contact with the projection which extended into the creek outside the canal line, and hence the primary cause of the collision is attributable to the navigation of the tow out of her course. This contention, however, is not persuasive. There was an abundance of water in the creek just outside the canal line at the point where the pushing steam canal boat ported her helm, and it is unimportant whether the impact was in the creek, close to the canal, or actually in the canalized portion of the stream. The claimant must be held wholly in fault, inasmuch as the evidence shows that the extention of the cribbing and failure to give warning thereof was the proximate cause of the dis-

aster. The City of New York, 147 U. S. 72, 13 Sup. Ct. 211, 37 L. Ed. 84.

I have considered the testimony of the witness Knight, and as to boat clearances in the month of May down to and including the date of collision. Such evidence, it is contended, is corroborative of the assertion that no canal boat and scow, such as described by witnesses for libelant, passed eastwardly at the time of the collision, and accordingly the claim that Capt. Kill was blinded by the glare of light is a pure fabrication. The evidence of Kill, master of the tow, and of Becker and Loughlin, two of the crew, is to the effect that a canal boat and scow with powerful reflector lights passed eastwardly on the opposite side of the canal. Such positive and direct testimony of witnesses who were in a position to accurately observe the occurrence is entitled to more credence than that of the witness Knight, who stood on a bank 300 feet distant, and whose testimony is purely negative. 3 Greenleaf on Evidence (6th Ed.) § 375; The Alabama (D. C.) 114 Fed. 214.

Neither, under the circumstances, would it have been prudent for the Hengerer to back her engine or for the Nonpariel to drop her anchor. To reverse the momentum of the tow, despite her slow speed, undoubtedly would have resulted in losing steering control, and probably with more certainty in disaster.

The propositions that libelant has no authority to maintain this action, on the ground that concededly the damages have been paid by the insurers of the cargo, and, further, that the business of the libelant was conducted under the trade-name of American Transit Company, are not thought to be of sufficient importance to warrant dismissing the libel. It is uniformly held that in a contract of affreightment, such as considered here, the party undertaking the carriage of merchandise or its transportation by water from one point to another is a bailee and has a special property therein, and on account of his interest in the property carried may bring an action against a wrongdoer to recover damages for its destruction or spoliation. Another action by the cargo owner or insurer to recover for the loss is not permitted, where the damage has been satisfied or the wrongdoer has been released from liability. Payment by the tort-feasor to the libelant of the damages sustained by reason of the injury would be an effectual bar to any further recovery arising out of the same cause of action, either by the cargo owner or the insurer. The Jersey City, 51 Fed. 527, 2 C. C. A. 365; Hardman v. Brett (C. C.) 37 Fed. 803, 2 L. R. A. 173. In The Commander in Chief, 1 Wall. 51, 17 L. Ed. 609, it was held that "undoubtedly all persons interested in a cause of collision may be joined in the libel for the prosecution of their own claims and the protection of their own interests," and that other persons interested in the recovery may petition to intervene for the protection of their interest at any time before the fund is actually distributed and paid out of the registry of the court. The Propeller Monticello v. Mollison, 17 How. 152, 15 L. Ed. 68; The Beaconsfield, 158 U. S. 303, 15 Sup. Ct. 860, 39 L. Ed. 993; City of Chicago v. Pennsylvania Co., 119 Fed. 504, 57 C. C. A. 509. The cases cited are applicable, and decisively negative the point that payment of the loss by the insurance company prevents recovery by the shipper or carrier.

In the case of Wood v. Erie Railway Co., 72 N. Y. 196, 28 Am. Rep. 195, it was decided by the New York Court of Appeals that the fact that an owner and shipper of property is doing business under a fictitious or trade name is no defense in an action by the owner for damage to such property while in transit. Hence it is clear, even though the contract of affreightment was made in the name of the American Transit Company, the undisputed evidence being that libelant transacted business under that name, that the objection urged is not such as to conclude the prosecution of this action in the individual name of libelant. In any event, no harm will result in allowing an amendment to the libel setting forth the fact that the business was conducted under the trade-name mentioned. Permission to so amend being requested in libelant's brief, it may be considered as granted. Benedict on Admiralty, § 483.

Evidence was given showing payment by libelant to the cargo owners of the amount of $19,106.74 in full of their damages. The damaged cargo was sold by libelant at auction for $5,000, and after paying expenses, as well as allowing for loss of freight, there remained an actual loss of $15,520.51. This amount libelant is entitled to recover, with interest from the 14th day of May, 1901.

A decree may therefore be entered against the New York Central & Hudson River Railroad Company, which alone is deemed in fault for the collision, and dismissing its petition to bring in the canal boats Nonpariel and William Hengerer, with costs.