CITY OF MILWAUKEE v. KENSINGTON S. S. CO.

KENSINGTON S. S. CO. v. CITY OF MILWAUKEE.

(Circuit Court of Appeals, Seventh Circuit. April 23, 1912.)

Nos. 1,817, 1,833.

1. NAVIGABLE WATERS (§ 20*)—LIABILITY FOR NEGLIGENCE—UNSAFE BRIDGE OVER NAVIGABLE STREAM.

A decree affirmed, holding a city solely liable for an injury received by a steamer by striking against the stone abutment of a drawbridge, through which she was being towed; it appearing that the tugs were not in fault, that the timbers by which the abutment had originally been

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

guarded had been allowed to rot away, and that the city had been notified of its dangerous condition.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 73–99; Dec. Dig. § 20.*]

2. ADMIRALTY (§ 122*)—COSTS—EQUITABLE DISTRIBUTION.

The owner of a vessel injured, while being towed through a drawbridge, by striking against the unguarded masonry, brought suit therefor against the towing tugs; and the claimants brought in the city, which maintained the bridge, under the fifty-ninth rule. The city was held solely in fault and liable for the injury. *Held*, that the claimants of the tugs were entitled to recover their costs from libelant, which was responsible for their being incurred.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 797–827; Dec. Dig. § 122.*]

Appeals from the District Court of the United States for the Eastern District of Wisconsin.

Suit in admiralty by the Kensington Steamship Company against the tugs Starke and Welcome, Sophie Meyer and others, claimants, in which the City of Milwaukee was impleaded. From the decree (182 Fed. 498), libelant and the city both appeal. Affirmed.

The parties in the court below were the Kensington Company, owner of the Kensington, libelant, the steam tugs Starke and Welcome, Sophie Meyer, Veronica Starke, and William C. Starke, executrix, executor, and trustees of the estate of Conrad Starke (former owner of the tugs), answering claimants, and the city of Milwaukee, brought into the case pursuant to the petition of claimants under the fifty-ninth admiralty rule, which provides for the bringing in of any other vessel, or any other party, when suitable allegations showing fault or negligence thereof shall appear by petition. The steamer was injured by striking the abutment of a bridge, while being towed by the tugs. The questions litigated were whether the tugs or the city was liable for the collision, and, the city having been found liable, how the costs of the tug owners should be paid. The decree finds the damages to be paid by the city to the steamer, with interest, $1,905.22, and the costs $213.95. It also charges the steamer with the costs of the tug owners, $55.86. Both the libelant and the city appeal.

It appears from the record that on the 3d day of December, 1907, the tugs Starke and Welcome were towing the steamer Kensington stern first, without cargo, but with water ballast, down the Milwaukee river at the port of Milwaukee. The Starke had a line from her bow and the Welcome had a line from her stern. The Kensington was not working her engines, the power being supplied by the Welcome at her stern. The length of the Kensington is 400 feet over all, and her beam is 50 feet. It is alleged that, when the Kensington entered the east draw of the State Street bridge, her starboard side about abreast of the center of the boiler house, at the light water mark, struck the upper and northerly portion of the easterly abutment of the State Street bridge, denting and fracturing one of the plates, and injuring the frame. The steamer was brought down stern first, because there was no place in the upper Milwaukee river to wind her. She was drawing 14 feet aft and 4 feet forward. When the accident happened her stern was probably 40 feet into the draw of the bridge. She proceeded in tow to Elevator A at the port of Milwaukee, where she was slightly listed by pumping out some of the water ballast, and a puncture, such that "you could about stick your finger into," was found, with cracks radiating two or three inches in different directions. The puncture was about a foot above the light water mark, but about 3 or 4 inches below the water line at that time.

It further appears that when the bridge was originally constructed the plans called for a cluster of piles near the point of collision, to protect the bridge and tend to the safety of passing vessels. The piles were left out,

―――――――――――――――――――――――――――――――――――――――――――――――――――――――――――

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

however, and the abutment protected by timbers. These had rotted away at the time of the accident, leaving the stone ledge entirely unprotected, and found by the trial court to have been under water. As to this point the evidence is not clear. It does appear, however, that the steamer was overloaded aft, and, being towed stern foremost, the tendency to sheer was difficult to overcome; the draw being only 13 feet wider than the steamer. The evidence very strongly tends to show that the tugs were carefully operated. No specific act or omission on their part is established. The mere fact of injury does not show negligence. In re W. H. Simpson, 80 Fed. 153, 25 C. C. A. 318. It is also shown that it is a common thing for large steamers, being towed stern foremost, to touch or graze the State street abutment. It appears from the record that the captains of the tugs knew of the condition of the bridge, as well as the owners of the tugs. About eight months before the accident the Milwaukee Tugboat Line, by C. J. Meyer, sent a letter to the Milwaukee board of public works, calling attention to the dangerous condition of several of the draws, among others that on State street, and giving notice that in case of injury to a tow it would hold the city liable for damage caused by the want of protection at such places. Both tug captains testified that, after the accident, they could see the ledge by running their boats through the draw, thus creating such a wave as to expose it to view. However, the evidence shows reasonable care on their part, and that the condition of the ledge was the sole cause of the injury.

Clifton Williams, for appellant.
M. C. Krause, for tugs Starke and Welcome.
John B. Richards, for appellee.

Before KOHLSAAT and MACK, Circuit Judges, and SANBORN, District Judge.

SANBORN, District Judge (after stating the facts as above).
[1] 1. We are entirely satisfied that the decision appealed from is fully supported by the evidence, and should not be disturbed, so far as the liability of the city is concerned. The ledge was a dangerous obstruction to navigation. Easily remedied by the maintenance of piles, it was the duty of the city to put them there, and there keep them. Failure to do this was negligence, the proximate cause of the injury. The bridge itself was an obstruction to navigation, permitted only to serve the convenience of commerce on land. Clearly it was the duty of the city to make it as safe as was reasonably possible. Clement v. Metropolitan West Side El. R. Co., 123 Fed. 271, 59 C. C. A. 289, and Vessel Owners' Towing Co. v. Wilson, 63 Fed. 626, 11 C. C. A. 366, both in this circuit; Great Lakes Towing Co. v. Kelley Island L. & T. Co., 176 Fed. 492, 100 C. C. A. 108, Fourth Circuit; The Nonpariel (D. C.) 149 Fed. 521. The case of Kelley Island L. & T. Co. v. Cleveland (D. C.) 144 Fed. 207, followed in Munroe v. Chicago (D. C.) 186 Fed. 564, was reversed on appeal, and a decree ordered against both the city and the towing company. 176 Fed. 492, 100 C. C. A. 108, supra.

[2] 2. The question of the propriety of charging the steamer with the costs of its unsuccessful attempt to show fault on the part of the tugs has not been decided, apparently, in any reported case. The trial judge wrote a separate opinion on this point. He said:

"The principle seems to be that in such a case the costs will be taxed against the party who renders it necessary that such costs and expenses should be incurred. This seems to be an equitable principle. Applying it to

the instant case, the libelant was solely responsible for the costs and expenses incurred by the tug company.. It brought such company into litigation and failed to maintain its contention against it. Why should it not reimburse the innocent party, whom it has brought in and compelled to incur these costs and expenses? Certainly the city of Milwaukee had no responsibility in the premises as between it and the tug company. The costs and expenses of the tug company were largely incurred before the city of Milwaukee was brought into the case, and there would seem to be no equitable ground upon which these costs should be taxed against the city of Milwaukee.

"There is another equitable feature which must not be lost sight of. The libelant, having failed to establish its contention against the tug company, would have gone out of court with empty hands and liable for a full bill of costs in favor of the tug company, had not the tug company caused the city of Milwaukee to be brought in by its petition under the fifty-ninth rule. The tug company was thus instrumental in rendering the libelant's recovery possible. It seems, therefore, only fair that the libelant should be held responsible for the costs and expenses of the tug company.

"In admiralty, as in equity, the prevailing party is generally entitled to costs; but they do not necessarily follow the decree, and are always in the exercise of a sound discretion, to be allowed, withheld, or divided according to the equities of the case."

The court properly applied the general rules governing such cases, and the decree should be affirmed on both appeals.

Affirmed.