**CITY OF NEW ORLEANS for Use and Benefit of SEWERAGE AND WATER BOARD OF NEW ORLEANS, Plaintiff-Appellee,**

v.

**AMERICAN COMMERCIAL LINES, INC., etc., Defendant-Appellant.**

No. 80–3754
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 3, 1981.

Fred E. Salley, T.A., New Orleans, La., for defendant-appellant.

John A. Gordon, Sp. Counsel, Gerard M. Victor, Sr. Counsel, New Orleans, La., for plaintiff-appellee.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

American Commercial Lines, Inc. (ACL) appeals a judgment in favor of the City of New Orleans for damages to a fender system caused by the tow of one of ACL's vessels. ACL contends the trial judge erred in exonerating the City of negligence and in computing damages. Finding no reversible error, we affirm.

## Facts

The Sewerage and Water Board of the City of New Orleans (S&WB) owns a water siphon, siphon house and protective fender system located on the east side of the Industrial Canal immediately south of the Florida Avenue Bridge. The S&WB fender system abuts the south end of the Florida Avenue Bridge fender system owned by the Louisiana Dock Board and maintained by the Army Corps of Engineers. There is a small gap between the two fender systems.[1] The S&WB fender, constructed in 1968, consists of steel beams attached to horizontal timbers which serve as rubbing walers. The beams, in turn, are attached to a dolphin,[2] located immediately south of the east side of the Florida Avenue gate structure. These beams traverse the face of the concrete siphon house. Vertical pipe cans, filled with liquid and designed to collapse on impact, are placed between the beams and the concrete house. Only modest repairs have been required since construction.

In the early evening hours of September 20, 1977, the M/V JAMES E. PHILPOTT, owned by ACL, was proceeding down the Industrial Canal with a tow of five barges—two in the port string and three in the starboard string. The PHILPOTT approached the Florida Street Bridge, signaled the bridge tender to open the draw and started through at two to three miles per hour. As the two lead barges cleared the bridge, there was a bump on the starboard side which caused the tow to move to port and collide with S&WB's fender. The bow rakes of the barge were impaled on the steel beams of the fender causing extensive damage to both the fender and barge. The fender system was temporarily repaired and subsequently replaced.

The City sued for damages to its fender system; ACL counterclaimed for damages to its barge. After a bench trial the district judge found that the damage to the fender was "caused solely by the fault of the defendant" and awarded the City damages consisting of the cost of temporary repairs plus the cost of replacement of the fender system, less an amount for depreciation of the timbers. The counterclaim was rejected.

On appeal, ACL contends the trial judge erred in concluding that the collision was caused solely by ACL's fault and in refusing to apply a depreciation factor to the entire fender system.

## Fault

ACL challenges the trial court's finding and conclusion that the damage to the fender was caused solely by the fault of the

---

1. There is a conflict in testimony concerning the exact size of the gap, estimated variously as several inches to several feet.

2. A dolphin is a circular, steel sheeting structure filled with concrete.

PHILPOTT. ACL argues that the damage was caused by the gap between the bridge's and the siphon's fender systems, reasoning that this gap permitted the front of the barge to become ensnared on the exposed edge of the S&WB fender. ACL contends that if the gap had been closed by joining the two fenders, the damage would not have occurred.

The limitations of appellate review preclude our acceptance of ACL's argument. Rule 52(a) of the Federal Rules of Civil Procedure mandates that "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." ACL's argument is principally an attack on the fact findings and credibility determinations of the trial judge who found that the tow veered off course, struck the fender and caused the damage. The record contains testimony by the bridge tender which supports those findings. ACL urges an alternative scenario—the vessel struck the bridge fender and slid along harmlessly until it reached the gap, at which point the damage occurred. The record contains testimony of the PHILPOTT's captain and deckhand which supports this explanation. The trial judge credited the bridge tender, and we do not question that decision on appeal.

It is too well established to require extensive citation that "credibility choices and the resolution of conflicting testimony are within the province of the court sitting without a jury, subject only to the clearly erroneous rule of Fed.R.Civ.P. 52(a)." *Rodriguez v. Jones*, 473 F.2d 599, 604 (5th Cir.), *cert. denied*, 412 U.S. 953, 93 S.Ct. 3023, 37 L.Ed.2d 1007 (1973). Before a finding may be ruled clearly erroneous, "the reviewing court on the entire evidence [must be] left with a definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). Our review of this record does not lead to the definite and firm conviction required for a reversal of

the fact findings. In addition, the judge's factual determination is supported by the presumption that a collision between a moving vessel and a stationary object is caused by the fault of the moving vessel. *Brown and Root Marine Operators, Inc. v. Zapata Off-Shore Co.*, 377 F.2d 724 (5th Cir. 1967); *Koch-Ellis Marine Contractors, Inc. v. Sewerage and Water Board of New Orleans*, 218 F.2d 771 (5th Cir. 1955).

ACL argues that the clearly erroneous standard of review is not controlling here because the crucial question is not one of fact, but of law—did the City have a duty to eliminate the gap between the fenders? ACL reasons that the fender is an obstruction to navigation and, therefore, the City had a duty to construct and maintain it so as to protect water-borne commerce.

We agree with ACL that we are not constrained by Rule 52(a) in reviewing questions of law or ultimate fact. *James v. Stockhan Valves & Fittings Co.*, 559 F.2d 310 (5th Cir. 1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978); *Parson v. Kaiser Aluminum & Chemical Corp.*, 575 F.2d 1374 (5th Cir. 1978), *cert. denied*, 441 U.S. 968, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979). We also agree with ACL that the law imposes a duty upon the owner of obstructions to navigation to install and maintain them so as to minimize the risk of harm to passing vessels. *Complaint of Wasson*, 495 F.2d 571 (7th Cir.), *cert. denied*, 419 U.S. 844, 95 S.Ct. 78, 42 L.Ed.2d 73 (1974); *Pennsylvania R. Co. v. The Buchanan Boys*, 155 F.2d 585 (2d Cir. 1946). The cases cited by ACL, however, are not dispositive of the issue before us, for each is concerned with a party's failure to take steps to prevent vessels from colliding with a navigational obstruction or with the failure to keep protective structures, such as fenders, in good repair. *See, e. g., Complaint of Wasson*, 495 F.2d 571 (7th Cir.), *cert. denied*, 419 U.S. 844, 95 S.Ct. 78, 42 L.Ed.2d 73 (1974) (timbers of fender system protecting railroad bridge fell into disrepair allowing barge to strike bridge pier); *City of Milwaukee v. Kensington S.S. Co.*, 199 F. 109 (7th Cir. 1912) (vessel under

tow collided with bridge abutment because timbers protecting it had rotted away); *Pennsylvania R. Co. v. The Buchanan Boys,* 155 F.2d 585 (2d Cir. 1946) (barge struck bridge abutment due to failure to maintain fender system in proper condition); *Southern Transportation Co. v. Philadelphia B. & W. R. Co.,* 196 F. 548 (D.Md.), *aff'd* 205 F. 732 (4th Cir. 1912) (barge struck underwater iron-shod timber projecting from pier of bridge).

We voice no disagreement with any of these cases; we merely note that they are inapposite. ACL does not contend that the City failed to take precautions to keep vessels from colliding with the siphon house or the fender. Nor does ACL contend that the fender system was in disrepair. ACL's position is premised on the failure of the City to connect its fender system with the bridge fender, thereby closing the gap. Stripped to its essentials, ACL is arguing that the City did not go far enough with its protective measures.

We decline ACL's invitation to impose such a duty on the City. The City constructed a fender system to prevent water traffic from colliding with its siphon house. The fender adequately protected the siphon house and vessels in navigation, and the City maintained its system in good repair. We hold it to no greater duty.[3]

### Depreciation

The trial judge awarded the City $49,-217.22. This figure represents $14,371 for removal costs and temporary repairs to the fender system plus $35,770 for replacement of the damaged system, less $923.78 for depreciation of the timbers used in the structure. ACL argues, citing the "new for the old" rule, that the trial judge erred in not depreciating the cost of the entire fender system. We disagree.

■ The new for the old rule provides that a party suffering injury is entitled to recover only that which is necessary to re-store his damaged property to the same condition as existed immediately prior to the delict. *Petition of M/V Elaine Jones,* 480 F.2d 11 (5th Cir. 1973). This rule is designed to avoid giving the injured person a windfall by furnishing something entirely new "for that which was old and depreciated and would in the normal course of things have to be replaced in any event." *State Highway Comm'n v. Tug Go-Getter,* 468 F.2d 1270, 1273 (9th Cir. 1972).

■ In the present case, the fender was nine years old when the mishap occurred. The trial judge found:

> The structural steel and collapsible pipe cans, as they are called, which formed the bulk of the fender system, had not deteriorated at the time of the casualty and certainly the pipe cans were to remain intact, in place and fully serviceable for their intended purpose until such time as they are struck in this kind of casualty, collapse and become expendable. *And there is no evidence of any deterioration at all of the steel members.* (Emphasis added.)

The factual findings underpinning the trial judge's conclusions are not clearly erroneous. His application of the controlling law is error-free. Consequently, we find the judge committed no error in refusing to depreciate the entire fender system.

The decision of the trial court is, in all respects, AFFIRMED.

---

3. There may be circumstances where the construction or maintenance of a fender system creates such a risk to navigation that liability will be imposed on the owner. We only hold that under the facts presented in this case, the City was under no duty to join its fender to the bridge fender system.