**Jack HEMINGWAY,**

v.

**STAR SAVANNAH, MV.**

**No. 1:00–CV–124.**

United States District Court, E.D. Texas, Beaumont Division.

March 20, 2002.

Geoffrey Clark Guill, Baytown, TX, for plaintiff.

Mark A. Freeman, Beaumont, TX, for defendant.

## AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

COBB, District Judge.

### INTRODUCTION

Comes now the court, and enters the following amended Findings of Fact and Conclusions of Law previously entered herein.

This maritime allision case was tried before the court sitting without a jury. Defendants, MAGSAYSAY LINES, INC., MAGSAYSAY MARITIME CORPORATION, and TRILINES SHIPPING, INC., in a previously filed stipulation of liability, admitted sole fault for the November 27, 1997, allision. The trial addressed only damages. The court, after considering the witnesses and evidence presented by both parties, enters the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. On November 27, 1997, the M/V STAR SAVANNAH, a foreign flagged vessel, 494 feet long with a 71′6″ beam rated at 18,764 deadweight tons and 23,697 displacement tons, allided with the F/V KELLY T and the F/V AQUILLA that were moored to the JBS Packing, Inc., dock located on the Sabine–Neches Canal within the city of Port Arthur, Jefferson County, Texas. The STAR SAVANNAH, after alliding with the KELLY T, scraped along a seven-pile mooring cluster at the southeast corner of plaintiff's dock. The STAR SAVANNAH never allided with plaintiff's dock structure or bulkhead.

2. At the time of the allision, the F/V KELLY T was moored, bow into the bank, with her starboard stern quarter adjacent to the plaintiff's seven-pile cluster.

3. The F/V AQUILLA was moored at plaintiff's dock facility approximately 150 feet upstream of the southeast corner of plaintiff's dock.

4. The dock structure in question was not owned by the plaintiff at the time of the incident, but was leased by the plaintiff from the Port of Port Arthur pursuant to a 1987 lease agreement and its subsequent extensions and modifications.

5. The dock was originally constructed in 1966. In 1976, the Port of Port Arthur rebuilt the dock section in question.

The dock structure in question was near the end of its useful life expectancy and had not been properly maintained for many years. When the plaintiff first obtained a leasehold interest in the subject property on January 13, 1987, both the lessor, the Port of Port Arthur Navigation District of Jefferson County, Texas, and the lessee, Jack Hemingway, specifically

acknowledged in the lease the property subject to this lawsuit was in poor condition and this was well known to both parties. January 13, 1987, lease between plaintiff and Port of Port Arthur, plaintiffs' Exhibit # 71. In 1987 the dock structures were in poor condition and the plaintiff has testified that he did not expend any funds on the maintenance or upgrade of the sheet piles, bulkhead, or fendering system from 1987 through November 1997, the date of the incident.

Despite a significant dispute concerning the cost of repairs from the witnesses, the testimony before the court shows that plaintiff did not participate in the joint survey, and the underwater damage which was revealed by plaintiff's expert, plaintiff had permitted 39 months to elapse before that inspection was made.

In addition, another of the plaintiff's experts, Mark Underhill, was not helpful to the plaintiff's claim or to the court in seeking the factual background in this case. Further, plaintiff continued its operations without repairs, and without substantial interruption of its business. The facility continued to deteriorate from its 1976 and 1987 repairs, and the contract between the lessor-owner and the plaintiff-lessee so reflected.

I find that the reasonable costs of repairs for this 35–year–old facility could have been repaired to its condition prior to the allision in question, considering depreciation from 1976 to 1997 to be:

| Item 1 | Repair to tops of Sheet Piling | $ 3841.00 |
| | Railing | 4666.00 |
| | Deck Repair | 5000.00 |
| | | $13,507.00 |
| | Less 40% Depreciation | (5,402.00) |
| Item 2 | Sheet piling | |
| | Replace | $14,332.00 |
| | Backfill | 10,513.00 |
| | | $24,845.00 |
| | Less 40% Depreciation | (9,938.00) |
| Item 3 | Seven pile dolphin | $ 6,000.00 |
| | Less 40% Depreciation | (2,400.00) |

## CONCLUSIONS OF LAW

1. This court has jurisdiction over all the parties, and has subject matter jurisdiction of this lawsuit under its admiralty and maritime jurisdiction, since the incident occurred in the navigable waters of the United States.

2. Negligence principles of the general maritime law control this case.

3. Physical damage to shore structures and to fixed objects such as the dock in question is compensable. Where the damage is reparable, there is liability for reasonable repairs. *City of New Orleans v. American Commercial Lines, Inc.*, 662 F.2d 1121 (5th Cir.1981).

4. Defendants have stipulated liability under the general maritime law.

5. Where a party is charged with liability for an allision and is not given notice of any survey of alleged damages, i.e., plaintiff's March 1998 unilateral, without notice underwater survey, and plaintiff's July 2000 inspection by its civil engineer and any claim for damages should be viewed with suspicion by the reviewing court. *Florida East Coast Railway Co. v. Revilo Corp.*, 637 F.2d 1060, 1067 (5th Cir.1981); *Delta Marine Co. v. M/V Baroid Ranger*, 454 F.2d 128 (5th Cir.1972).

6. The entire facility was at least 40% depreciated and repairs made do not enhance its value, but merely restore it to its condition prior to November 1997.

The amount of damages for repairs is $44,352.00, less 40% depreciation of $17,741 due to the age and condition of the facility leased to plaintiff Hemingway, for a total in damages of $26,611.00. Interest of this judgment shall be at the rate of 2.28% per annum from this date until paid.

Costs in this court are taxed against the defendants.